IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ACCLAIM SYSTEMS, INC.,<br><br>　　　　　　　Plaintiff<br><br>　　　　v.<br><br>INFOSYS, LTD. and<br>VEDAINFO, INC.<br><br>　　　　　　　Defendants | Civil Action No. _____ |

## COMPLAINT

### Parties

1.　　Plaintiff is Acclaim Systems, Inc. ("Acclaim" or "Plaintiff"), a corporation organized under Illinois law with a principal place of business at 110 East Pennsylvania Blvd., Feasterville, PA 19053.

2.　　Defendants are:

　　　　a.　　Infosys, Ltd. ("Infosys"), a multinational corporation with headquarters in Bangalore, Karnataka, India, and a usual place of business in the United States at 10850 West Park Place, Suite 800, Milwaukee, WI 53224.

　　　　b.　　Vedainfo, Inc. ("Vedainfo"), a corporation of unknown origin with a principal place of business at 10500 Barkley St. Ste:110, Overland Park, KS 66212.

### Jurisdiction

3.　　This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1332 because Plaintiff seeks in excess of $75,000 and the parties' citizenship is completely diverse.

## Facts

4. Acclaim is a small business certified by United States Small Business Administration as a small disadvantaged business ("SDB").

5. Acclaim is certified as a minority-owned business in various jurisdictions including Pennsylvania.

6. Acclaim is in the business of providing software and computer technology analysts to public companies and government agencies.

7. The crux of Acclaim's business model is guarding against the hiring away of its analysts by competing vendors.

8. Often, Acclaim contracts with other vendors who in turn contract with the analysts who are placed with Acclaim's client.

9. In this case, Acclaim contracted with two companies called Global Infotech, Inc. ("Global") and Sysintelli, Inc. ("Sysintelli") which then contracted with analysts who were placed with Acclaim's client.

10. Prior to commencing services with Plaintiff, both of these Defendants executed an agreement containing a non-competition provision as well as the express assent to injunctive relief if the respective defendant breached the Agreement.

11. Plaintiff's Agreements with Global and Sysintelli provide:

Vendor and Consultant agree not to conduct business at Acclaim's client for a period of one (1) year from termination of this contract. Violation of this covenant will result in legal action to prohibit such solicitation or conducting of business. The stipulations in this paragraph will survive the termination of this agreement.

The Vendor agrees that the Client revealed in Addendum Exhibit A, Individual Work Order, or any client introduced by Acclaim to Vendor or Vendor's consultant is a client of Acclaim. Once the name of the Client is revealed to the Vendor and for a period of one (1) year thereafter, whether or not the services of the Vendor are engaged by Acclaim, it shall not compete with Acclaim in any manner, either directly or indirectly,

through any other vendor or company, whether for compensation or otherwise, or assist any other person or entity to compete with Acclaim with this client or any other Client so revealed to the Vendor with which Acclaim does business.

Should the Vendor breach any of the above covenants of solicitation and non-competition, Acclaim shall have the right to immediately terminate this agreement and to seek legal and/or equitable relief, including injunctive relief against the Vendor. Vendor understands and acknowledges that a breach of this covenant would cause substantial harm to Acclaim, which would be difficult to calculate.

*See* Exhibits A and B hereto, at ¶10.

12. An individual named Timothy J. Blackwell ("Blackwell") contracted with Acclaim to provide technical analysis services to Acclaim's clients. Exhibit C.

13. Blackwell's contract also contained a non-competition provision:

During the term of the employment and for a term of one (1) year thereafter regardless of whether Your employment was terminated voluntarily or for negligence, poor performance, cause or no reason, You shall not for yourself or on behalf of any other person, corporation, firm or other entity, without the prior written consent of Acclaim, directly or indirectly, solicit, sell, service, accept, manage or otherwise seek to acquire the business of any person or entity who was, within three (3) years preceding the cessation of Your employment by Acclaim a client or active prospective client of Acclaim or with whom Acclaim had any contact, or received any confidential or proprietary information, for the purpose of attempting to provide or providing services in competition with Acclaim.... [Acclaim] shall have all rights and remedies available in law or in equity as to enforcement of the terms of this Agreement, including injunctive relief, temporary and/or permanent and the right to reimbursement for all costs and expenses incurred in or by reason of collection of sums due and/or enforcement, including attorney's fees and court costs...

*See* Exhibit C hereto, at ¶5.

14. At all times relevant to this matter, Acclaim's client with regard to the foregoing Agreements was Time Warner Cable ("TWC"). Acclaim contracted with TWC to supply tech analysts for an ongoing project at TWC's facility in Charlotte, North Carolina ("TWC Contract"). A copy of the TWC Contract, dated March 11, 2010, is attached hereto as Exhibit "D."

15. Pursuant to the TWC Contract, Acclaim supplied numerous tech analysts to TWC, including the following four individuals:

    a. Pavan Jasthi ("Jasthi")

    b. Santosh Nellutla ("Nellutla")

    c. Leslie Mendonca ("Mendonca")

    d. Defendant herein, Timothy Blackwell.

16. At all relevant times, Jasthi and Nellutla were employees of Global.

17. At all relevant times, Mendonca was an employee of Sysintelli.

18. At all relevant times, Blackwell was an employee of Acclaim.

19. On or about August 22, 2013, Blackwell resigned from Acclaim and accepted a position at TWC through Defendant herein, Infosys, a company which garnered notoriety for off-shoring American jobs.

20. The "new" position Blackwell accepted with Infosys is, in actuality, the same TWC position he held while working for Acclaim.

21. In other words, Blackwell was placed in the same job at TWC through Infosys that he was doing at TWC through Acclaim.

22. On or about October 1, 2013, Global placed Jasthi and Nellutla in positions at TWC through Infosys.

23. The "new" positions in which Jasthi and Nellutla were placed are, in actuality, the same TWC positions, respectively, which Jasthi and Nellutla held while working for Acclaim.

24. In other words, Jasthi and Nellutla were placed in the same respective jobs at TWC through Infosys that they were doing at TWC through Acclaim.

25. On or about October 1, 2013, Sysintelli placed Mendonca in a position at TWC through Infosys.

26. The "new" position in which Mendonca was placed is, in actuality, the same TWC position which Mendonca held while working for Acclaim.

27. In other words, Mendonca was placed in the same job at TWC through Infosys that she was doing at TWC through Acclaim.

28. Each of the individuals described above are salesforce.com analysts.

29. Each of the individuals described above was working on a salesforce.com project at TWC prior to their separation from Acclaim. Acclaim has been working on the TWC project since March 2009. Infosys poached Acclaim's "entire team" with further intention of later transitioning and offshoring American jobs.

30. The placement of the foregoing analysts by Infosys in the same TWC jobs they had through Acclaim is a breach of the provisions of the above-described Agreements.

31. Upon information and belief, at the time it placed the analysts with TWC, Infosys had notice of the restrictive covenants contained with the Agreements.

32. Infosys acted knowingly and voluntarily when it coordinated the placement of the analysts at TWC.

33. Infosys acted with the intent to gain a business advantage at the expense of Acclaim.

34. Infosys acted in concert with Global, Sysintelli, and the individual analysts.

35. Infosys acted in concert with Defendant herein, Vedainfo, as discussed below under Counts III, IV, and V.

36. The tortious conduct committed by both Infosys and Vedainfois evidence, in part, by emails communications between and among Infosys, Vedainfo and the analysts. The email communications were sent to and from Acclaim's analysts through the use of the analysts' "Acclaimsystems.com" email addresses. Attached hereto as Exhibit "E" is a sampling of the email communications which so far have been recovered by Acclaim.

37. Acclaim has suffered substantial damages, far in excess of the jurisdictional threshold of $75,000.

38. As a result of Defendants' tortious conduct, Acclaim lost a contract worth approximately $1,200,000 per year in revenue, with resultant lost profits in the approximate amount of $300,000.00.

39. As a result of Defendants' tortious conduct, Acclaim lost relationships with its vendors which had been established over the course of several years.

40. As a result of Defendants' tortious conduct, Acclaims lost its salesforce.com personnel, who developed niche technical skills while working for Acclaim.

41. In addition, Acclaim has suffered and continues to suffer damages which are not yet ascertainable but reserves the right to seek recovery on account of all actual and projected damages at time of trial in accordance with the counts set forth below.

## COUNT I—TORTIOUS INTERFERENCE WITH CONTRACTUAL RIGHTS
(Acclaim v. Infosys)

42. Acclaim incorporates the foregoing averments of this pleading as if set forth at length within this Count.

43. Infosys had notice of a contractual relationship between Acclaim and Global.

44. Infosys had notice of a contractual relationship between Acclaim and Sysintelli.

45. Infosys had notice of a contractual relationship between Acclaim and Blackwell.

46. Infosys had notice of a contractual relationship between Acclaim and TWC.

47. Despite this knowledge, Infosys contracted with TWC to place the analysts working for Acclaim in the exact same positions in which Acclaim had placed them.

48. Infosys's improper actions constitute intentional interference with the contractual relationship between Acclaim and Global.

49. Infosys's actions constitute intentional interference with the contractual relationship between Acclaim and Sysintelli.

50. Infosys's actions constitute intentional interference with the contractual relationship between Acclaim and Blackwell.

51. Infosys's actions constitute intentional interference with the contractual relationship between Acclaim and TWC.

52. Infosys acted in surreptitious manner, soliciting the analysts to depart Acclaim to work in the same exact TWC positions through Infosys. Infosys appropriated Acclaim's entire team; consultants, employee and vendors by wrongful means and improper conduct.

53. Upon information and belief, Infosys was well aware of Acclaim's rights under each of the Exhibits attached hereto.

54. Infosys's actions were not protected by any privilege.

55. Infosys's tortious interference has caused Acclaim damages which are not yet capable of precise calculation.

56. Inclusive of punitive damages, Acclaim's damages are in excess of $75,000.

WHEREFORE, pursuant to Count I, Plaintiff Acclaim Systems, Inc. requests judgment in its favor and against Defendant Infosys, Ltd. in an amount in excess of $75,000, including

compensatory damages, punitive damages, taxable costs and such other relief as warranted by law or equity.

### COUNT II—AIDING/ABETTING/INDUCING CONTRACTUAL BREACHES
(Acclaim v. Infosys)

57. Acclaim incorporates the foregoing averments of this pleading as if set forth at length within this Count.

58. By offering the analysts positions at TWC, Infosys induced breaches of Acclaim's Agreements with Global, Sysintelli and Blackwell.

59. Infosys acted with the specific intent to cause the analysts to leave their TWC positions through Acclaim and to accept the same positions through Infosys.

60. Infosys's intentional actions constitute actionable aiding and abetting breaches of Acclaim's Agreements.

61. Infosys's actions have caused Acclaim to suffer damages which are not yet capable of precise calculation.

62. Inclusive of punitive damages, Acclaim's damages are in excess of $75,000.

WHEREFORE, pursuant to Count II, Plaintiff Acclaim Systems, Inc. requests judgment in its favor and against Defendant Infosys, Ltd. in an amount in excess of $75,000, including compensatory damages, punitive damages, taxable costs and such other relief as warranted by law or equity.

### COUNT III—TORTIOUS INTERFERENCE WITH CONTRACTUAL RIGHTS
(Acclaim v. Vedainfo)

63. Acclaim incorporates the foregoing averments of this pleading as if set forth at length within this Count.

64. During its efforts to poach Acclaim's analysts, Infosys acted in concert with Defendant Vedainfo.

65. Upon information and belief, Infosys contracted with Vedainfo to facilitate the transfer of Acclaim's analysts to Infosys.

66. Vedainfo, as an agent of Infosys, had notice of a contractual relationship between Acclaim and Global.

67. Vedainfo, as an agent of Infosys, had notice of a contractual relationship between Acclaim and Sysintelli.

68. Vedainfo, as an agent of Infosys, had notice of a contractual relationship between Acclaim and Blackwell.

69. Vedainfo, as an agent of Infosys, had notice of a contractual relationship between Acclaim and TWC.

70. Despite this knowledge, Vedainfo coordinated the placement of the Acclaim analysts with Infosys in the exact same positions in which Acclaim had placed them.

71. Vedainfo's actions constitute intentional interference with the contractual relationship between Acclaim and Global.

72. Vedainfo's actions constitute intentional interference with the contractual relationship between Acclaim and Sysintelli.

73. Vedainfo's actions constitute intentional interference with the contractual relationship between Acclaim and Blackwell.

74. Vedainfo's actions constitute intentional interference with the contractual relationship between Acclaim and TWC.

75.     Vedainfo acted in surreptitious manner, soliciting the analysts to depart Acclaim to work in the same exact TWC positions through Infosys.

76.     Upon information and belief, Vedainfo was well aware of Acclaim's rights under each of the Exhibits attached hereto.

77.     Vedainfo's actions were not protected by any privilege.

78.     Vedainfo's tortious interference has caused Acclaim damages which are not yet capable of precise calculation.

79.     Inclusive of punitive damages, Acclaim's damages are in excess of $75,000.

WHEREFORE, pursuant to Count III, Plaintiff Acclaim Systems, Inc. requests judgment in its favor and against Defendant Vedainfo, Inc. in an amount in excess of $75,000, including compensatory damages, punitive damages, taxable costs and such other relief as warranted by law or equity.

## COUNT IV— AIDING/ABETTING/INDUCING CONTRACTUAL BREACHES
### (Acclaim v. Vedainfo)

80.     Acclaim incorporates the foregoing averments of this pleading as if set forth at length within this Count.

81.     By coordinating the transfer of the analysts to Infosys, Vedainfo induced breaches of Acclaim's Agreements with Global, Sysintelli and Blackwell.

82.     Vedainfo acted with the specific intent to cause the analysts to leave their TWC positions through Acclaim and to accept the same positions through Infosys.

83.     Vedainfo's intentional actions constitute actionable aiding and abetting breaches of Acclaim's Agreements.

84.     Vedainfo's actions have caused Acclaim to suffer damages which are not yet capable of precise calculation.

85. Inclusive of punitive damages, Acclaim's damages are in excess of $75,000.

WHEREFORE, pursuant to Count IV, Plaintiff Acclaim Systems, Inc. requests judgment in its favor and against Defendant Vedainfo, Inc. in an amount in excess of $75,000, including compensatory damages, punitive damages, taxable costs and such other relief as warranted by law or equity.

### COUNT V—CIVIL CONSPIRACY
### (Acclaim v. Defendants)

86. Acclaim incorporates the foregoing averments of this pleading as if set forth at length within this Count.

87. Under Pennsylvania law, a civil conspiracy has been defined as a combination between two or more persons to do an unlawful act, or to do a lawful act by unlawful means; or, variously, as a combination between two or more persons by some concerted action to accomplish an unlawful purpose.

88. Civil conspiracy also requires an overt act done in pursuance of the common purpose, and actual legal damage.

89. Under Pennsylvania law, there may be instances where a civil conspiracy claim may be independently actionable without the existence of a separate underlying tort.

90. The definition of a civil conspiracy actually encompasses two separate and independent grounds for liability, each evolving out of a distinct strain of reasoning.

91. Conspiracy to commit an unlawful act is derived from the view that the conspiracy does not exist at all as an independent tort.

92. Combination to do a lawful act by unlawful means, on the other hand, stems from a contrary line of authority holding that the conspiracy itself was an independent tort.

93. While these two theories seem diametrically opposed, the modern Pennsylvania tort of civil conspiracy is a fusion of both lines of cases and makes actionable the tort of conspiracy under either of the antecedent strains.

94. The proper remedy to recover damages for injury to the person or property of the plaintiff due to a civil conspiracy, previously an action in trespass, is now a civil action.

95. Pennsylvania specifically recognizes a cause of action conspiracy to interfere with a contractual relationship.

96. In this case, as detailed above, Defendants Infosys and Vedainfo conspired with each other to interfere, disrupt and destroy Acclaim's relationship with TWC.

97. Further, Defendants Infosys and Vedainfo conspired with each other to interfere, disrupt and destroy Acclaim's relationship with Global Infotech, Sysintelli, and Blackwell.

98. The conspiracy involved tortious conduct given that the underlying conduct constituted intentional interference with Acclaim's contractual rights and, in addition, the aiding and abetting of the above-described contractual breaches.

99. Acclaim has suffered significant damages and will continue to suffer significant damages as a direct and proximate result of the civil conspiracy.

WHEREFORE, pursuant to Count V, Plaintiff Acclaim Systems, Inc. requests judgment in its favor and against Defendants Infosys, Ltd. and Vedainfo, Inc., jointly and severally, in an amount in excess of $75,000, including compensatory damages, punitive damages, taxable costs and such other relief as warranted by law or equity.

Date: 12/11/13

HALBERSTADT CURLEY LLC

By: _____
Scott M. Rothman
PA Attorney ID No. 201478
Halberstadt Curley, LLC
Spring Mill Corporate Center
1100 E. Hector Street, Suite 425
Conshohocken, PA 19428
(610) 834-8819 (tel.)
(610) 834-8813 (fax)
srothman@halcur.com

## TRIAL BY JURY DEMANDED

Plaintiff Acclaim systems, Inc. hereby demands a trial by jury.

Date: 12/11/13

HALBERSTADT CURLEY LLC

By: _____
Scott M. Rothman
PA Attorney ID No. 201478
Halberstadt Curley, LLC
Spring Mill Corporate Center
1100 E. Hector Street, Suite 425
Conshohocken, PA 19428
(610) 834-8819 (tel.)
(610) 834-8813 (fax)
srothman@halcur.com