IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ACCLAIM SYSTEMS, INC., *Plaintiff*, | : : : | CIVIL ACTION |
| v. | : : : | FILED JUL 1 4 2015 |
| INFOSYS, LTD., et al, *Defendants.* | : : | No. 13-7336 |

MEMORANDUM OPINION

PRATTER, J.                                                                                     JULY 14, 2015

Acclaim Systems, Inc. ("Acclaim") brings suit against Infosys, Ltd. ("Infosys") and Vedainfo, Inc. ("Vedainfo") for their alleged "poaching" of Acclaim's employees in violation of those employees' non-compete agreements with Acclaim. Vedainfo now seeks dismissal of Acclaim's First Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and for failure to timely complete service under Rule 4(m). The Court will grant the Motion in part and deny it in part as set forth below.

ENTERED
JUL 1 4 2015
CLERK OF COURT

I.     BACKGROUND

a. Alleged Facts[1]

Acclaim's business is to provide technology analysts to companies, such as (in this case) Time Warner Cable. Acclaim finds these analysts, often, by contracting with other vendors of analysts, such as (again, in this case) Global Infotech, Inc. and Sysintelli, Inc. Before assigning analysts from Global and Sysintelli to Time Warner Cable, Acclaim executed a non-competition contract with Global and Sysintelli, in which Global and Sysintelli agreed "not to conduct

---

[1] The facts recounted in this section are drawn from Acclaim's First Amended Complaint and are assumed true for the purposes of this analysis.

1

business at Acclaim's client [Time Warner] for a period of one (1) year from termination of this contract." First Am. Compl. ¶ 10. Acclaim also contracted directly with an analyst named Timothy Blackwell for Mr. Blackwell to provide technical services to Time Warner Cable. Mr. Blackwell's contract with Acclaim likewise included a non-competition agreement. In all, four analysts were assigned by Acclaim to Time Warner Cable: Pavan Jasthi, an employee of Global, Santosh Nellutia, an employee of Global, Leslie Mendonca, an employee of Sysintelli, and Timothy Blackwell, an employee of Acclaim. These four employees were placed on a project called "salesforce.com."

Mr. Blackwell was the first to defect. Mr. Blackwell resigned from Acclaim in August 2013 and accepted a position with Acclaim's competitor, Defendant Infosys, which then placed Mr. Blackwell at Time Warner Cable performing the same duties as he had performed while working for Acclaim. In October 2013, Pavan Jasthi, Santosh Nellutla, and Lelis Mendonca, up to that point working at Time Warner Cable on behalf of Acclaim, were placed in positions at Time Warner Cable by Infosys. These last three individuals continued to work directly for Global and Sysintelli and were still on the "salesforce.com" team, but now worked on behalf of Infosys rather than Acclaim. Accordingly, Global, Sysintelli, and Mr. Blackwell breached the non-competition provisions in their contracts with Acclaim by working for Time Warner Cable through Infosys. Infosys had notice of the restrictive covenants in each of these contracts, but knowingly and voluntarily disregarded them in hiring away these analysts.

Infosys allegedly did not act alone, however. Rather, Infosys conspired with Vedainfo. Vedainfo served as a "buffer" or "protective screen" between Infosys and Acclaim's analysts. Vedainfo was characterized as Infosys's "empaneled vendor," making it responsible for conducting the due diligence before hiring the analysts. Part of Vedainfo's responsibility was to

determine whether the hired analysts were subject to any non-compete agreements. Vedainfo was aware, as was Infosys, that the analysts at issue here were subject to Acclaim's non-compete agreements. Nevertheless, Vedainfo did the "dirty work" for Infosys by contracting directly for the services of the analysts. Curiously, Vedainfo was paid only a two-dollar margin, far below the industry standard for an "empaneled vendor."

Acclaim has suffered the loss of the Time Warner contract worth about $1.2 million in revenue per year, resulting in a loss of $300,000 in profit. Acclaim also lost relationships with vendors Global and Sysintelli, as well as the analysts on the salesforce.com team who developed "super niche" technical skills.

Acclaim brings tortious interference with contract claims against Infosys and Vedainfo. Acclaim also brings a claim for "aiding/abetting/inducing contractual breaches" claim against both Defendants. Finally, Acclaim brings a civil conspiracy claim against both for conspiring to tortiously interfere with Acclaim's contractual relations.

**b. Procedural History**

This case began in December 2013, but, at that time, only Infosys was served with the Complaint. Acclaim did not serve Vedainfo until a year later, on December 19, 2014. Reportedly, Acclaim had first tried to serve Vedainfo in January 2014 at a Kansas address that Acclaim found listed online. That attempt was unsuccessful. Acclaim next found online a California address for Vedainfo, and Acclaim tried to serve Vedainfo at that address in late January or early February 2014, but was again unsuccessful. In October 2014, Infosys successfully served a subpoena on Vedainfo at the California address and served a copy of the subpoena on Acclaim. However, Infosys reportedly did not share with Acclaim any of the documents produced by Vedainfo in response to that subpoena, leading Acclaim to believe that

the subpoena had not been successfully served on Vedainfo. In November 2014, Infosys deposed Raj Srinivasan as a corporate designee of Infosys under Rule 30(b)(6). At Mr. Srinivasan's deposition, he was asked about the whereabouts of Vedainfo, which had been listed as a subject area about which the corporate designee should have knowledge, but Mr. Srinivasan either refused to state an address or was unable to do so. Infosys also did not provide any contact information for Vedainfo in its Rule 26(a) disclosures (and did not supplement its response after successfully serving Vedainfo at the address in California). Only on December 12, 2014, the day after a hearing on a Motion to Compel filed by Acclaim against Infosys, at which the lack of an address for Vedainfo was discussed, did Infosys tell Acclaim that it had successfully served Vedainfo in California. One week later, Vedainfo was served with Acclaim's Complaint. Vedainfo moved to dismiss that Complaint in late January 2015. Acclaim has since filed an Amended Complaint, and Vedainfo has now moved for dismissal of that Amended Complaint.

## II.   ANALYSIS

When considering whether a Complaint can survive a challenge under Rule 12(b)(6), the Court determines whether the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Motion to Dismiss from Vedainfo raises three arguments. First, Vedainfo argues that Acclaim has failed to state claims for tortious interference with contract and for civil conspiracy. Second, Vedainfo argues that aiding and abetting breach of contract does not exist as a cause of

action under Pennsylvania law. Finally, Vedainfo argues that the Complaint should be dismissed because Vedainfo was not served within 120 days of the filing of the Complaint.

### a. Tortious Interference with Contract

To allege tortious interference with an existing or prospective contract under Pennsylvania law, a plaintiff must allege four elements: (1) that a contractual relationship existed between the plaintiff and another party; (2) that the defendant intended to harm that contractual relationship by purposefully interfering with it; (3) that the defendant lacked privilege or justification for its conduct; and (4) that the plaintiff suffered actual damages as a result of the defendant's conduct. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009); *BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 407 (E.D. Pa. 2013).

Here, Acclaim alleges that that Vedainfo tortiously interfered with both the non-compete agreements Acclaim had with its former employees and the contract Acclaim had with Time Warner Cable.

### 1. Acclaim's Non-Compete Agreements with its Former Employees

Vedainfo argues that Acclaim has made only conclusory allegations as to Vedainfo's conduct with respect to the non-compete agreements Acclaim had with its former employees. The Court concludes otherwise. Acclaim's allegations plainly state the basis for the claims asserted: Acclaim had non-compete agreements with several analysts; Vedainfo, acting on behalf of Infosys, and knowing of these non-compete agreements, hired away Acclaim's analysts and placed them in the exact same positions with Time Warner Cable that those analysts had previously held. This resulted in Acclaim losing revenue from supplying Time Warner Cable with analysts. This is a well-pleaded claim satisfying the elements of (1) the existence of contractual relationships between Acclaim and other parties (the non-compete agreements with

Global, Sysintelli, and Mr. Blackwell); (2) an intent on Vedainfo's part to harm those contractual relationships by purposeful action interfering with those contractual relationship (by hiring the analysts for Infosys, causing Global, Sysintelli, and Mr. Blackwell to breach their respective non-compete agreements with Acclaim); (3) the lack of privilege or justification (see *infra*); and (4) actual damages (the lost revenue from Time Warner Cable). Vedainfo argues that Acclaim's evidentiary support for these claims is lacking, but that is not an inquiry for the Motion to Dismiss stage.

Vedainfo also argues that a tortious interference claim requires that the interference be based on an independently actionable wrong, and that absent an independently actionable wrong, Acclaim cannot properly allege a lack of privilege or justification on Vedainfo's behalf. *Cf. Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2014 WL 2616824, at *19 (E.D. Pa. June 11, 2014) ("The presence of a privilege is not an affirmative defense, rather, the absence of such a privilege is an element of the cause of action which must be pleaded and proven by the plaintiff."). However, Vedainfo is mistaking the standard for interference with *prospective* contractual relations, or for a contract terminable at will, with the standard for interference with *existing* contractual relations. The Third Circuit Court of Appeals has held that to state a claim against a competitor for interference with prospective contractual relations or for a contract terminable at will, a plaintiff must "demonstrate that a defendant engaged in conduct that was actionable on a basis independent of the interference claim."*Acumed*, 561 F.3d at 215 (construing Restatement (Second) of Torts § 768 cmt. e (elements of tortious interference with prospective contractual relations)). But, as § 768 itself notes, "The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will."

6

Restatement (Second) of Torts § 768(2). Where a contract is not terminable at will,[2] as here, the privilege based on competition does not apply. *See id.* cmt. i ("An employment contract, however, may be only partially terminable at will. Thus it may leave the employment at the employee's option but provide that he is under a continuing obligation not to engage in competition with his former employer. Under these circumstances a defendant engaged in the same business might induce the employee to quit his job, but he would not be justified in engaging the employee to work for him in an activity that would mean violation of the contract not to compete."); *see also Symphony Health Solutions Corp. v. IMS Health Inc.*, No. 13-4290, 2014 WL 4063360, at *2 (E.D. Pa. Aug. 15, 2014) ("However the competitor's privilege does not shield a company from tortious interference with an employee bound by a covenant not to compete.").

Therefore, because Acclaim has alleged that Vedainfo cannot assert the competition privilege under § 768, the "wrongful means" analysis under § 768 does not apply, and Acclaim must merely allege that the interference was "improper" under the factors set forth in § 767 of the Restatement (Second) of Torts. Those factors are: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." Restatement (Second) of Torts § 767.

---

[2] While the analysts could end their employment at will, the non-compete clauses in the contracts could not be terminated at will—those clauses had a set term of two years. *Cf. Reading Radio, Inc. v. Fink*, 833 A.2d 199, 209 (Pa. Super. Ct. 2003) ("Interference with a covenant-not-to-compete, on the other hand, is actionable in tort, despite an employee's 'at-will employment' status.").

Here, Acclaim has, at this early stage, sufficiently alleged that Vedainfo acted without justification in interfering with Acclaim's contractual relations. Acclaim alleges that it had valid non-compete agreements with the analysts, and that Vedainfo, aware of these agreements, acted to cause these analysts to breach their agreements with Acclaim in order to do the very same jobs for Infosys. Such alleged conduct, if true, would strike at the very heart of the purpose behind Acclaim's non-compete agreement. If, as alleged, Vedainfo was aware of the non-compete agreements but nonetheless caused the analysts to defect to Infosys, then Vedainfo would have indeed specifically intended to induce the breach of the contract. Vedainfo's alleged role as a surreptitious "protective screen" for Infosys further highlights the potentially insidious nature of the alleged conduct, wherein two companies allegedly conspired to both induce a breach of contract and then cover their tracks. Because Acclaim has plausibly alleged that Vedainfo acted improperly and without privilege in inducing the analysts to breach their non-compete agreements, Acclaim's tortious interference with contract claim will survive.

### 2. Acclaim's Contractual Relations with Time Warner Cable

Likewise, Acclaim has sufficiently alleged that Vedainfo tortiously interfered with its contract with Time Warner Cable. Acclaim has alleged that it had a contractual relationship with Time Warner Cable that was severed as a result of Vedainfo's hiring of Acclaim's former employees. The allegations are not clear as to whether Vedainfo's actions severed an existing contract between Acclaim and Time Warner Cable, or merely resulted in that contract's non-renewal, but, in either case, Acclaim's claim for tortious interference with contractual relations will survive. Supposing, for the sake of this analysis, that Acclaim's contract with Time Warner Cable was terminable at will or prospective, then Section 768 of the Restatement (Second) of Torts would apply, and Acclaim would need to "demonstrate that a defendant engaged in

8

conduct that was actionable on a basis independent of the interference claim." *Acumed*, 561 F.3d at 215 (construing Restatement (Second) of Torts § 768 cmt. e (elements of tortious interference with prospective contractual relations)). Acclaim has done so here. Acclaim alleges, as detailed above, that Vedainfo tortiously interfered with Acclaim's non-compete agreements with its employees. This independently actionable wrong can underlie the alleged tortious interference with Acclaim's contractual relations with Time Warner Cable.

### b. Civil Conspiracy

Similarly, Acclaim's civil conspiracy claim will survive. Vedainfo argues that a civil conspiracy claim cannot lie without an underlying tort. This is true. However, here, the tortious interference with contract claims suffice as underlying torts. The Complaint plausibly alleges an agreement between Vedainfo and Infosys to induce the analysts to breach their non-compete agreements, and, as a result, interfere with the contractual relations between Acclaim and Time Warner Cable. *See Zaloga v. Borough of Moosic*, No. 3:10-CV-2604, 2015 WL 3755003, at *14 (M.D. Pa. June 16, 2015) ("In Pennsylvania, to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." (quotation marks omitted))

### c. Aiding and Abetting Breach of Contract

Acclaim seeks to state a claim against Vedainfo for "aiding/abetting/inducing contractual breaches." *See* First Am. Compl. ¶¶ 103-08. This cryptic, generalized claim will be dismissed. Acclaim has not cited any authority for the notion that aiding and abetting a breach of contract is a tort recognized in Pennsylvania. Pennsylvania law only recognizes aiding and abetting liability

9

if there is underlying *tortious* conduct. *See Austin v. Hill*, No. 11-2847, 2014 WL 1386338, at *13 (E.D. Pa. Apr. 9, 2014) ("[L]iability for aiding and abetting requires proof of three elements: underlying tortious conduct, knowledge, and substantial assistance."). "Breach of contract, without more, is not a tort." *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 664 (3d Cir. 1993). To the extent this claim is to be read as alleging "inducing contractual breaches," such a claim is duplicative of the tortious interference with contract claim. *Cf. MacKay v. Donovan*, 747 F. Supp. 2d 496, 504 (E.D. Pa. 2010) ("Although Plaintiffs do not plead Count V as a tort, but rather as 'aiding and abetting in breach of contract,' for the purpose of this Motion the Court will construe this claim as a claim for tortious interference with contract.").

In their Response to the Motion to Dismiss, Acclaim attempts to construe this claim as "aiding and abetting tortious interference with contract." The Court does not read the Complaint as articulating such a claim. Therefore, the Court will dismiss the claim of "aiding/abetting/inducing contractual breaches."

### d. Choice of Law

Both parties appear to assume that Pennsylvania law will apply to the claims asserted. Curiously, neither party has addressed whether the law of the state where the employees were located, North Carolina, should apply. The Court concludes that, at this stage, there is no conflict between Pennsylvania and North Carolina law and analysis under either jurisdiction's laws would produce the same results. The Court does wish, however, to alert the parties to the potential for a choice-of-law issue.

As a federal court sitting in diversity, the Court applies the conflict of law rules of the forum state (here, Pennsylvania). *Klaxon v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487 (1941). Pennsylvania applies a flexible methodology to choice-of-law questions wherein the

Court must first analyze whether the laws of the competing jurisdictions conflict. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007). If the laws of the competing jurisdictions do not conflict, the Court will apply Pennsylvania law. *Id.* at 229. If the laws of the competing jurisdictions do conflict, the Court must then determine which state has the "greater interest in the application of its law." *Id.* at 231. In doing so, the Court must "weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue." *Id.*

At this preliminary stage, the Court does not perceive a conflict between the laws of North Carolina and Pennsylvania with respect to the claims alleged here. Under North Carolina law, tortious interference with contract has five elements: (1) a valid contract between the plaintiff and a third person; (2) knowledge by the defendant of plaintiff's contract with that third person; (3) that the defendant intentionally induces the third person to breach the contract; (4) a lack of privilege or justification for the defendant's actions; and (5) actual damages to the plaintiff. *Clinical Staffing, Inc. v. Worldwide Travel Staffing Ltd.*, 60 F. Supp. 3d 618, 626-27 (E.D.N.C. 2013). Although North Carolina law appears to recognize some form of a "competitor's privilege" for interference with non-compete clauses, that privilege is limited. In *Peoples Security Life Insurance Co. v. Hooks*, 367 S.E.2d 647, 650 (N.C. 1988), the North Carolina Supreme Court concluded that "the hiring and placing of the plaintiff's former employees by the defendant for the purpose of developing the territory assigned to him by a company competing with the plaintiff amounted to justifiable interference" with the employees' non-compete clauses with the plaintiff. Crucially, in *Hooks*, "[t]he complaint [did] not allege that the defendant solicited or serviced policyholders of Peoples Life. Neither [did] the complaint allege that the defendant directly interfered with existing policies. Rather, it allege[d] that

11

because the defendant induced certain of the plaintiff's employees to change employers, he generally 'interfered with plaintiff's business.'" *Hooks*, 367 S.E.2d at 652.

Later cases have clarified that the privilege identified in *Hooks* is limited. In *United Laboratories, Inc., v. Kuykendall*, 370 S.E.2d 375, 388 (N.C. 1988), the Court clarified that the competitors' privilege in *Hooks* was largely limited to instances "in which a competitor is merely hiring a competitor's employees." In *United Laboratories*, the Court distinguished the facts before it from the facts in *Hooks*. The Court found sufficient to state a claim the plaintiff's allegations that "upon terminating his employment with plaintiff, defendant Kuykendall solicited the same customers he had serviced while employed by plaintiff, a direct violation of the covenants not to compete. Moreover, the evidence shows that defendant Share knew, at the time it hired Kuykendall, that Kuykendall had signed covenants not to compete, and, in fact, agreed to pay all legal expenses, if any, Kuykendall would incur as a result of breaching the covenants." *Id.* at 387-88. *United Laboratories* and *Hooks* establish the two poles of North Carolina's "wrongful-purpose" test for these types of cases between competitors. *See Roane-Barker v. Se. Hosp. Supply Corp.*, 392 S.E.2d 663, 669 (N.C. Ct. App. 1990) ("[T]he privilege to interfere is conditional or qualified; that is, it is lost if exercised for a wrong purpose. In general, a wrong purpose exists where the act is done other than as a reasonable and *bona fide* attempt to protect the interest of the defendant which is involved." (*quoting Hooks*, 367 S.E.2d at 388)). The touchstones of the wrongful-purpose test appear to be the directness of the violation of the non-compete agreement and the extent to which the defendant intentionally took actions designed to specifically defeat the purposes of the non-compete agreements.

To put it another way, the wrongful-purpose test in North Carolina looks much like the improper-means test in Pennsylvania (the latter of which considers "(a) the nature of the actor's

12

conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties."). The allegations of Acclaim meet either test. The allegations are more similar to those in *United Laboratories* than to those in *Hooks*. Acclaim is not alleging that Vedainfo merely hired the at-issue employees and placed them in the general territory in which they had worked for Acclaim. Rather, Acclaim is alleging a targeted, coordinated, and surreptitious series of actions in which Vedainfo, fully aware of the non-compete contracts between Acclaim and the at-issue employees, conspired to hire those employees to work on the exact same project for the exact same client at the exact same location as they had under Acclaim—defeating every purpose of the non-compete agreements. Moreover, Acclaim alleges that Vedainfo worked as a "protective screen" for Infosys, in further attempt to prevent Acclaim from protecting the interests it sought to protect through the non-compete agreements. On the face of the Complaint, there is no allegation from which the Court can conclude that Vedainfo was acting in "a reasonable and *bona fide* attempt to protect the interest of [Vedainfo] which is involved." *Hooks*, 367 S.E.2d at 388.

The Court similarly perceives no conflict between Pennsylvania and North Carolina law as it relates to the alleged tortious interference with Acclaim's contract with Time Warner Cable. Again assuming for the purposes of this analysis that the Acclaim's contract with Time Warner Cable was not renewed (making it a prospective or terminable at will contract rather than an existing contract) as a result of Vedainfo's conduct, then, under North Carolina law, Acclaim would need to allege that: 1) a valid contract would have existed between Acclaim and Time

Warner Cable but for Vedainfo's conduct; 2) Vedainfo maliciously induced Time Warner Cable to not enter into the contract; and 3) Vedainfo thereby proximately caused Acclaim to suffer actual damages. *See SAS Inst. Inc. v. World Programming Ltd.*, 64 F. Supp. 3d 755, 780 (E.D.N.C. 2014). This tort is labeled "tortious interference with prospective economic advantage" in North Carolina. The elements for tortious interference with prospective economic advantage in North Carolina and for tortious interference with a prospective contract in Pennsylvania are substantially similar and would produce the same result here. In Pennsylvania, this type of tort would be analyzed under the Restatement (Second) of Torts § 768 and would require allegations of "wrongful means." Under North Carolina law, Acclaim needs to allege malicious action. At this stage, Acclaim's allegations satisfy either analysis. As explained above, Acclaim has alleged Vedainfo's conduct constitutes wrongful means. Acclaim has also sufficiently alleged malicious conduct. "The word 'malicious' used in referring to malicious interference with formation of a contract does not import ill will, but refers to an interference with design of injury to plaintiff or gaining some advantage at his expense." *Coleman v. Whisnant*, 35 S.E.2d 647, 656 (N.C. 1945). Here, Acclaim has alleged that Vedainfo, lacking justification, using independently actionable, tortious means (*i.e.* inducing the at-issue employees to breach their non-compete agreements), and with specific knowledge of the contract Acclaim had with Time Warner Cable, acted so as to induce Time Warner not to continue its contract with Acclaim but to award the contract to Infosys. The Court draws the reasonable inference from these allegations that Vedainfo's design was to injure Acclaim and, by helping Infosys, gain some advantage at Acclaim's expense. This is sufficient to allege tortious interference with a prospective contract under North Carolina and Pennsylvania law, and, accordingly, at this stage, no conflict exists between the laws of these jurisdictions with respect to this claim.

There is no conflict with respect to the civil conspiracy claim. The elements of civil conspiracy in North Carolina are "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Estate of Tipton ex rel. Tipton v. High Point Univ.*, No. 14-1286, 2015 WL 3793263, at *3 (N.C. Ct. App. June 16, 2015). In Pennsylvania the elements are "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Zaloga*, 2015 WL 3755003, at *14. The allegations here satisfy both similar sets of elements.

Finally, there is no conflict with respect to the "aiding/abetting/inducing contractual breaches claim." The Court is unaware of any North Carolina authority supporting a claim for aiding and abetting a breach of contract.

The Court therefore concludes that no real conflict exists between North Carolina and Pennsylvania law, as the results do not differ under either standard. As the case progresses, however, a conflict between the application of North Carolina and Pennsylvania law may well appear. The parties should be prepared to present argument and evidence as to which jurisdiction's laws should apply to the claims in this case.

### e. Acclaim's failure to serve Vedainfo within 120 days

Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the

time for service for an appropriate period." Fed. R. Civ. P. 4(m). The Third Circuit Court of Appeals has instructed that "[f]irst, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).

Here, although Acclaim has an understandable gripe against Infosys for not sharing Vedainfo's address, good cause has not been demonstrated. Courts look primarily at three factors in determining whether good cause exists: "(1) reasonableness of plaintiff's efforts to serve; (2) prejudice to the defendant by lack of timely service; and (3) whether plaintiff moved for an enlargement of time to serve." *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). Acclaim's efforts at service were far short of herculean. Acclaim attempted to serve Vedainfo in California, but then, after what appears to be a single failure of a process server, gave up and did not try again for months. *Cf. Petrucelli*, 46 F.3d 1298, 1307 (3d Cir. 1995) ("[R]eliance upon a third party or on a process server is an insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient basis for granting an extension of time to effect service."). Vedainfo included as an exhibit to their Motion a copy of their webpage which includes "contact" information for Vedainfo, including the correct address in California. Particularly problematic for a finding of good cause is Acclaim's failure to request additional time to serve Vedainfo. The lack of a motion for additional time to serve Vedainfo is somewhat puzzling and has not been adequately explained by Acclaim. Because these two factors weigh heavily against a finding of good cause, the Court finds good cause does not exist here.

In the absence of good cause, the Court has the discretion to extend the time for service on its own. The Court will do so. The interests of judicial economy weigh in favor of keeping this case consolidated and moving forward. The statute of limitations has not expired on the claims, which means that Vedainfo will not suffer any prejudice should the Court not dismiss the case for failure to timely effectuate service—Acclaim could simply refile its Complaint against Vedainfo, and the only upshot would be the further delay of the ultimate resolution of this matter. The Court is also motivated by the extent to which Acclaim does not shoulder all of the blame for its failure to timely serve Acclaim.

The Court therefore rules that the time for service of Vedainfo will hereby be extended up through the date that Vedainfo was served.

### III. CONCLUSION

For the foregoing reasons, the Court denies Vedainfo's Motion to Dismiss except as to Count IV of the Complaint, which alleges that Vedainfo aided and abetted a breach of contract. That portion of the Complaint is dismissed with prejudice. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge